IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:08-3462-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| $44,700.00 in United States Currency, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff's motion for summary judgment and motion

for sanctions and dismissal of Claimant Brandon Hodge's ("Hodge") claim. For the reasons set

forth below, the court grants Plaintiff's motion for summary judgment and denies the motion for

sanctions and dismissal as moot.

## I. FACTUAL AND PROCEDURAL HISTORY

This case is an in rem forfeiture action involving the United States' seizure of

$44,700.00 ("Defendant Currency") from Hodge on May 29, 2008. (Am. Compl. ¶ 4.) On May

29, 2008, Deputy Ben Brown ("Deputy Brown") and Deputy Casey Cope ("Deputy Cope")

initiated a traffic stop after noticing suspicious behavior by the occupants of a silver Chrysler

300 and that the two occupants were not wearing seatbelts. (Id. ¶ 8(A).) Deputy Brown

approached the driver of the car, Hodge, and the passenger, Bryant Scales ("Scales"). While

explaining his reasons for stopping the car, Deputy Brown noticed that Hodge's "level of

nervousness continued to rise instead of decrease." (Id. ¶ 8(E).) As Deputy Brown prepared the

warning ticket for the seatbelt violation, Deputy March Ervin ("Deputy Ervin"), accompanied by

Corporal Matt Bradshaw ("Corporal Bradshaw"), arrived with his canine to conduct a "free-air sniff around the vehicle." (Id. ¶ 8(F).) Deputy Ervin soon advised Deputy Brown that the canine had positively alerted on the driver's door for the presence of narcotics. During a search of the vehicle, Corporal Bradshaw discovered two loaded Smith and Wesson handguns and a black duffel bag containing United States currency inside the vehicle's trunk. (Id. ¶ 8(G).) The deputies seized the currency and firearms and transported Hodge and Scales to the Spartanburg County Sheriff's Office for further questioning.

The United States filed the instant in rem forfeiture action on October 10, 2008. The Government believes that the Defendant Currency is connected to illegal drug trafficking. Hodge, however, contests the forfeiture of the Defendant Currency and claims that "he earned the seized money under the table at his landscaping business, and from rental houses." (Am. Compl. ¶ 8(J).)

> Hodge stated that he was going to take the money to Atlanta to buy real estate "under the table," so that he would not have to pay taxes on the money. Deputy Brown asked Hodge why he did not deposit the money in a checking account, and pay for the property that way. Hodge replied that if he put the money in a checking account, IRS would find out about it, and then he would have to pay taxes on the money.

(Id.) In order to substantiate Hodge's allegations, the Government sought discovery relating to Hodge's alleged sources of income to account for the Defendant Currency.

The United States filed a motion to compel discovery on July 24, 2009. This court granted Plaintiff's motion to compel on August 14, 2009. On September 11, 2009, the United States filed a motion for sanctions alleging that Hodge failed to comply with the court's

August 14, 2009 order compelling discovery.  In particular, the United States alleged that during Hodge's deposition on August 20, 2009, Hodge "acknowledged that he still had other documents which he had not produced" yet he failed to produce those documents following his deposition. (First Mot. Sanctions 2-3.)  The court held a hearing on the motion on October 6, 2009.  Prior to the hearing, Hodge's attorney provided some of the requested discovery which included (1) a list containing individuals' names and telephone numbers who allegedly paid Hodge for his company's services, (2) a verification signed by Hodge to accompany his answers to previous interrogatories, and (3) a response by Hodge indicating that he did not have any further documents although he stated to the contrary during his deposition.  (Second Mot. Sanctions 3.) Additionally, during the hearing, the parties agreed to resume Hodge's deposition.  Accordingly, the court found that the United States' first motion for sanctions was moot.

The United States filed a second motion for sanctions on December 16, 2009.  The response was due January 4, 2010; however, no response was filed.  On January 26, 2010, the court granted Hodge ten days to fully comply with all pending discovery requests, giving the United States leave to refile if Hodge failed to comply.  Hodge did not respond to the United States' discovery request within the allotted ten days.  Accordingly, the United States filed a renewed motion for sanctions seeking dismissal of Hodge's claim on February 10, 2010.  The United States also filed the instant motion for summary judgment on February 18, 2010.  Hodge filed a memorandum in opposition to the motion for sanctions on February 22, 2010, and a memorandum in opposition to the motion for summary judgment on March 15, 2010.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Plaintiff's Motion For Summary Judgment

The United States argues that it is entitled to summary judgment against the Defendant Currency because it has proven "by a preponderance of evidence that the seized currency is subject to forfeiture as proceeds derived from the sale of controlled substances, and [Hodge] is

unable to rebut that showing or to prove that he is an innocent owner of the defendant currency."

(Pl. Mem. Supp. Summ. J. 14.)  The United States brought this action against the Defendant

Currency pursuant to 21 U.S.C. § 881(a)(6) (2002), which states in pertinent part:

> All moneys, negotiable instruments, securities, or other things of value furnished
> or intended to be furnished by any person in exchange for a controlled substance
> . . . all proceeds traceable to such an exchange, and all moneys, negotiable
> instruments, and securities used or intended to be used to facilitate any violation
> of this subchapter [shall be subject to forfeiture to the United States and no
> property right shall exist in them].

18 U.S.C. § 981(a)(1)(B)(i) similarly states that

> [a]ny property, real or personal, within the jurisdiction of the United States,
> constituting, derived from, or traceable to, any proceeds obtained directly or
> indirectly from an offense against a foreign nation, or any property used to
> facilitate such an offense, if the offense–involves trafficking in . . . or distribution
> of a controlled substance [is subject to forfeiture to the United States].

The United States asserts that "the totality of the evidence clearly supports the conclusion that the

defendant currency constitutes proceeds of illegal drug dealing, or was intended to be used for

such purposes."  (Pl. Mem. Supp. Summ. J. 16.)  Hodge, on the other hand, argues that the

Defendant Currency was legitimately earned and was to be used for real estate transactions in

Georgia.  (Claimant Mem. Opp'n Summ. J. 1.)

"In actions brought under [21 U.S.C. § 881(a)(6)], the government must show probable

cause for the belief that a substantial connection exists between the property forfeited and the

criminal activity defined by the statute."  United States v. $95,945.18, United States Currency,

913 F.2d 1106, 1110 (4th Cir. 1990).  Probable cause is defined as a "reasonable ground for

belief of guilt, supported by less than prima facie proof but more than mere suspicion."  Id.

(quoting United States v. $364,960 In U.S. Currency, 661 F.2d 319,323 (5th Cir. Unit B 1981)).

"Under the substantial connection test, the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. At minimum, the property must have more than an incidental or fortuitous connection to criminal activity." Id. (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990)). "Once the government meets the showing of probable cause, the burden of proof shifts to the claimant to establish, by a preponderance of the evidence, that the property was not used in violation of the law or was not intended to be used unlawfully." Id.

Upon careful review of the record and facts in this case, the court finds that the United States has met its initial burden to establish probable cause to believe that the Defendant Currency bears a connection with criminal activity. The United States asserts that this case "has several indications of illegal drug trafficking, with the use of a rental car, a large quantity of unexplained cash, the presence of weapons, and travel to a source city by an individual with a track record of prior involvement with drugs and firearms." (Pl. Mem. Supp. Summ. J. 16.) More specifically, the Defendant Currency was "bundled in small denominations, and . . . secured with either black or red rubber bands." (Am. Compl. ¶ 8(G).) "Evidence of unexplained wealth is relevant . . . as evidence of illegal dealings and ill-gotten gains." United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir. 1986); see also, United States v. $252,300.00 in U.S. Currency, 484 F.3d 1271, 1275 (4th Cir. 2007) ("A large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is 'strong evidence' of such a connection.").

Additionally, the court considers Hodge's inability to establish the legitimacy of the Defendant Currency as further proof of the substantial likelihood that the Defendant Currency

was either proceeds of or was used to facilitate drug trafficking. See e.g., $252,300 in U.S. Currency, 484 F.3d at 1275 (finding evidence of claimant's inability to substantiate proof of income "is entitled to considerable weight"); United States v. $174,206 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) (finding that evidence showing that claimants' "legitimate income was insufficient to explain the large amount of currency found in their possession" was sufficient for government to satisfy its probable cause standard). Hodge has failed to provide the court with any evidence of income to prove that the Defendant Currency was earned legitimately. In fact, according to Hodge's income taxes, Hodge only reported $7,315.00 in income in 2005, $10,199.00 in 2006, and $18,190.00 in 2007. (Pl. Mem. Supp. Summ. J. 17.) Hodge has not disputed the income amounts from his income tax returns, rather he alleges that his income tax returns do not reflect all of his income. (Pl. Mem. Supp. Summ. J. Ex. (Hodge Dep. 65-66).) Hodge, however, has failed to provide the court with any proof of income.

Hodge's only argument in response to the United States' motion for summary judgment is that a genuine issue of material fact exists as to why he was traveling with the Defendant Currency. (Claimant Mem. Opp'n Summ. J. 3.) According to Hodge, the deposition testimony of Sharon Smith ("Smith") creates an issue of material fact because she explains that Hodge was driving to Georgia to purchase real estate. (Id.) To support his allegation, Hodge includes a one-page excerpt whereby Smith alleges that she and Hodge "were going to look at foreclosed houses" on May 29, 2008. (Id. Ex. 1 (Smith Dep. 38).) The court does not find this evidence sufficient to raise any genuine issue of material fact that the Defendant Currency was not used in violation of the law or was not intended to be used unlawfully. The only inference that can be drawn from the evidence is that the money was derived from illegal drug trafficking.

Accordingly, the court finds that the United States has met its burden to establish probable cause for the belief that a substantial connection exists between the Defendant Currency and drug trafficking and Hodge has failed to establish that the Defendant Currency was legitimately earned and was not used for criminal activity. Based on the foregoing, the court grants the United States' motion for summary judgment and denies the United States' motion for sanctions as moot.

Therefore, it is

**ORDERED** that Plaintiff's motion for summary judgment, docket number 51, is granted. It is further

**ORDERED** that Plaintiff's motion for sanctions and dismissal, docket number 47, is denied as moot.

**IT IS SO ORDERED.**


                                        s/Henry M. Herlong, Jr.
                                        Senior United States District Judge

Greenville, South Carolina
March 23, 2010